May it please the Court, Luke Wake, on behalf of Robert Mayfield and RU Enterprises, I would like to reserve five minutes for rebuttal. I'd like to make three points today. First, under Loper-Bright's anti-deference standard of review, the text and structure of the FLSA make clear that any employee performing EAP duties qualifies for the EAP exemption. As Justice Kavanaugh recognized in the Hewitt opinion, the text exempts based on duties, not dollars. Second, the Department cannot add to the text to impose conditions that it finds convenient or desirable because that would arrogate Congress's power as the lawmaker. And third, the panel is not bound by the Wirtz opinion because the Supreme Court has since changed the governing standard of statutory review. Now, if I can, I'd like to elaborate on these points a little. If an employee is genuinely performing EAP duties, then they are properly classified as exempt. You didn't mention in your points the major questions. We don't need to deal with major questions, do we? Absolutely major questions is part of this, and I'm happy to address any questions on major questions. Do you need major questions doctrine to win this case? You don't need the major questions doctrine to win this case. You can resolve this case based on the ordinary canons of statutory construction, looking at the plain meaning of the text, looking at the structure of the act. But certainly the major questions doctrine is applicable under the Supreme Court precedent, but as well as this Court's precedent. You can look at the Nuclear Regulatory Commission case. So it is absolutely relevant. And that's part of this, by the way, that's part of the change in the standard of review that the Supreme Court has since mandated that courts apply when assessing statutory questions since the Wirtz decision. So that is certainly relevant. So we're getting back to delegation of authority or non-delegation of authority as a condition for satisfying the EAP exemption? Yes, and of course, I'm happy to talk about the non-delegation doctrine if you like. That's certainly part of it, we believe. Let's talk about the text first. Yes, please, let's do. Because I apprehended your first-line argument is the text doesn't allow the minimum salary rule. Absolutely. So what do we do with this phrase that will bedevil us, I suspect, define and delimit? I mean, the EAP exception in the statute talks about people employed in a bona fide capacity as an executive, as an administrative person, or as a professional, right? So the DOL is given the authority to define and delimit what that means. Correct. Doesn't that give them the ability to set what is basically a floor on who qualifies? No, they have to— Why not? There's nothing talismanic about the terms define and delimit. Well, but what are the distinctions between those two terms? You can—they have to define within—define and delimit within the objective meaning of the operative text. But your argument about the EAP exception applying to functions fits, to me, squarely within define. It's kind of a neat convergence there in terms of defining what that is. But what about delimit? Well, delimit— I'm bona fide. Sure. I'm happy to talk about each of those terms. With regard to the delimit question which you've asked about, for example, in the duties tests, one of the considerations may be the degree to which an employee has decision-making power over whether an employee is promoted or disciplined or whatnot. And they could delimit within that definition if they wanted to some degree of numerical accounting of how much sort of authority they have to have there. I believe in that case, the define and delimit, though, does not give them, though, free-wielding ability to add concepts that are alien to the text because, again, the operative language that we're dealing with is any employee employed in a bona fide executive or administrative capacity. So bona fide simply means that they are genuinely working in an EAP capacity. And what DOL has said is we're going to say bona fide is—I mean, I'm putting words in their mouth, but they've effectively said we're going to say it's anybody making above this minimum salary level because people who make less than that are not really executives or not really professionals or not really administrative. You know, they don't fit within it. Well, again, that does not— Why can they not do that based on the text? Because the text, the plain meaning of the text, if you look at the meaning of executive, for example, it means to work in an executive role. The term capacity talks—if you ask an employee, and this comports with the dictionary definition, by the way, if you look at the term capacity, if you ask an employee, in what capacity do you work, they're not going to talk to you about what sort of salary they're paid or whether they're paid on a salary basis. They're going to talk about their role within the company, their role within a hierarchical structure of a company, their functions within the workplace. But isn't part of that what they make? No, not at all. And the notion that we have to look at an employee's compensation in order to understand whether they are a bona fide executive or administrative capacity misses the point. They've always—and they admit, they've always admitted that they employ this test as a salary basis and the minimum salary test as a sort of proxy for getting at the sort of employees who are actually working on duties because they— Who are bona fide. Again, bona fide merely means that they are genuinely employed in an EAP capacity. So that begs the question, ultimately, of what it means to be working in an executive capacity. But didn't Congress delegate that to the DOL? In terms of the statutory text, we're not talking about the non-delegation doctrine yet. Sure, sure. No, respectfully, they did not because—and there's a number of reasons to reject that. One is the plain sort of dictionary definitions and including within—just looking at Section 213A1 itself, for example, it exempts teachers with no caveat about salaries. No one thinks about high salaries when you think about a teacher. And yet a teacher is exempt because she teaches. Likewise, a manager is exempt because she works in an executive capacity. And if there's questions of—if just looking in isolation at the operative text leaves some degree of ambiguity, that is quickly resolved as soon as you look at the structure of the Act as is required by the canons of construction. And the structure of the Act confirms that time and again when Congress wanted to condition the FLSA exemptions on compensation requirements, it did so explicitly. And moreover, Your Honor, the original version of the FLSA demonstrates that when Congress wanted to delegate authority for the Department to set minimum compensation rules, it did so explicitly and it provided clear guardrails. Yeah, but you've got to also—I mean, that—looking at the history cuts both ways because Congress has amended the FLSA many times. They've never touched the minimum salary rule. So you've got something that you're asking us to upend that's, what, 85, 86 years old? Again, this Court, under the Loeb or Bright standard, which is the current and correct standard of reviewing statutory questions, has to apply the canons of construction, looking to the text and the structure of the Act, and now the major questions doctrine, to decide on the best meaning of that. And Loeb or Bright was emphatic, not just that we don't apply—give any deference to the Executive Branch, but by that same token, the Court— Well, it's not a matter of deference, per se. I mean, Chevron is overruled, but Skidmore is not, right? I mean, doesn't that factor in what the practice of the agency has been? But then we've also got to deal with what Congress has done and not done over the ensuing decades. I mean, this isn't a rule from last year. It is not a rule from last year, although the Department has just this year further raised minimum salary requirements, and they continue— Well, it's changed over time, but the basics of the rule, which you're arguing finds no support in the statutory text, I mean, have been around for quite some time. The fact that Congress has arguably acquiesced to what the Department has done over the years does not speak to the meaning of the text. That would, at best—and the Supreme Court has said this in numerous opinions—at best, legislative acquiescence is a poor beacon for discerning legislative intent, and it certainly—and you can look, for example, at your sister court in the Sixth Circuit, the Tiger-Lily case, where the Court rejected the government's ratification arguments for the CDC's eviction moratorium, which we cited this in our case. But the Court said, we're certainly not going to accept a sort of legislative acquiescence view here or a ratification view simply because the government says so when the text and the structure of the Act is clear. Well, but there's a lot more than that here, I guess. I don't know that I'm agreeing with you that the text of the statute is clear to the extent that it talks about bona fide employees. It talks about the authority of the agency to define and to limit who falls within this exception. And we also have to weigh the structure of the Act, the overall goals of the FLSA. This is an exception to those overall goals and the overall coverage, right? Your Honor, the Encino Motor Cars case is very instructive here. The Encino Motor Cars emphasizes that the FLSA exceptions are every bit as part of the purpose of the FLSA as anything else. And you don't put a thumb on the scale in interpreting the FLSA exemptions to achieve any specific purpose. You have to give those exemptions a fair reading. And that's precisely what we're urging you to do here. And as for this notion that the agency's longstanding practice of asserting a minimum salary rulemaking authority plays into it, it doesn't. Because that's essentially to use Justice Scalia's phrase from Rapatos v. United States, an adverse possession approach to executive power. And Loeber-Bright, I think, repudiates this notion that an agency is entitled automatically to any sort of deference, including by—a bit more deference only comes into play insofar as you believe their interpretation is persuasive. But it's not a persuasive— So, I mean, assume this is an exemption to an exemption. Let's apply Skidmore deference—how would—applying Skidmore deference here, deciding whether Skidmore deference is appropriate? You only apply Skidmore deference insofar to determine whether that's appropriate to apply Skidmore deference. The question is simply, is the agency's interpretation persuasive? And— Is it? It is not. Why? I would look to the Supreme Court's decision, I think, that's most on point here, is the Addison v. Holly Hill Fruit case, in which the Supreme Court said, consistent with the Loeber-Bright framework, by the way, that the Department could not add conditions to an FLSA exemption— You can't add an exemption to an exemption. And that was an exemption— It's not reasonable or appropriate in any circumstance, so we don't have to look at whether this is a good exemption or not. No, I'm—we need to put some meat on the bones here. We're talking about all these really interesting concepts. We need to talk about the facts of this case. Absolutely. So can you help? Thanks. Yes. So I just—to clarify, in that case, the FLSA exemption, the Department had the authority to define the operative text. That didn't give them opportunity to add—the exemption specifically at issue there was about the geographical scope of the work being done, and they attempted, for the matter of administrative convenience, not unlike what the Department has done here, to add a condition saying—dealing with a number of employees that had to work at the work site in order for the exemption to apply. The agency's doing the same thing here. As a matter of essentially administrative convenience, they're using minimum salary as a sort of screening mechanism to get at the sort of employees who are actually performing the right duties. But minimum salary rules are not a substitute. They're not a substitute for, look, examining the employees' duties. And we know that for two reasons. One, because the minimum salary rules exclude millions of employees who are performing EAP duties, and— Of course, even duties is not in the exemption. Well, well, it excludes millions of employees who are performing in an EAP capacity. I'm not saying I disagree with your reading, but I'm just saying that you're traveling under terms that aren't in the exemption either. Fair. All right. So assume that—assume we find there is a delegation that's—the text of the statute allows DOA to do this—DOL to do this. So talk about non-delegation. You go back in your briefing to Panama Refining and Schechter Poultry. What's happened lately? Because now we're going back 90 years and asking the Court to strike this down based on non-delegation. How do we do that? First of all, this case is on all fours with Panama Refining and Schechter. But the Fifth Circuit actually— Because of the NIRA or— The National Industrial Recovery Act, which, by the way, even the Department of— But, I mean, the derivation of this—these things from the NIRA or— Yes. So the Fifth Circuit, by the way, just as we were preparing for oral argument here, issued a decision in Consumers Research v. FCC— I was going to ask you if we should remand this to look at the Loper right, like that case just did. No, Your Honor— The other one, the two—within two weeks, I think Judge Willett had a panel that remanded to the agency and said, look, we've got to do this under the right standard. Why shouldn't we do that here? That would be inappropriate for three reasons here. First and foremost, the panel—we already know the decision—the panel believes it's bound by the Wirtz decision, and I don't think that changes because of Loper right. I think it should change, but I don't think the district court would think that. What are you saying? What was that? Well, I'm sorry. Why shouldn't we remand this case to the agency to apply under the correct standards? I'm sorry. And you're saying the panel's made a decision? You want to—you're talking about remanding the agent, this case— That's what just happened in another case within the past couple of weeks. I believe that— I'm sorry. Go ahead. My understanding was that that case was remanded back to the district court for a reconsideration. Okay. So it's— And that shouldn't happen here because the district court in this case believes it's bound by Wirtz, but also— But it also applied Chevron, didn't it? It applied Chevron, but it also said in rejecting our major questions, Doctor, that even setting aside Chevron, that that court found—Judge Pittman found that the case was—even setting aside Chevron, that there was a clear statement delegating authority to the Department and that the agency was acting within the bounds, even outside of Chevron, he said that. Of course, that raises the non-delegation issue, which— Why—yes. So why aren't we remanded to apply the correct standard? Again, because Judge Pittman has already said, applying the very sort of framework that the Department would like you to apply in the post-Loperbright world, he's affirmed their rationale in rejecting our clear statement arguments under the major questions doctrine. But that's not—assuming argument that that's not the correct framework, if—why wouldn't we articulate the correct framework, ask the court to look at non-delegation and send it back? The court has already—well, the court has already rejected our non-delegation arguments as well. So they rejected all of the arguments presented here. So again, even if you remand back, we know already what the district court's going to say. It said even setting aside Chevron, it would rule the same way, and it said that they would reject our non—they already did reject our non-delegation arguments. You're out of time, but I'm not. I've been waiting to answer—ask you a question. You argue that 213a.1 implicates the major question doctrine. It's typically only invoked when an agency makes an unprecedented assertion of authority. How is the salaried level test unprecedented when it's been used since 1938? I believe the answer here is that you look at your—the Fifth Circuit's decision in Nuclear Regulatory Commission, which is binding on this panel, for the proposition that the questions doctrine applies when the agency asserts authority over a hotly contested political issue. And any time we're dealing with compensation rules, it's hotly contested. And in any event, the broader point in major questions and in statutory construction in general is that we should interpret the statute in context to consider in what way would Congress likely delegate the sort of authority that the agency's claiming. Okay. Thank you. You still have time for rebuttal. Okay. Good morning, and may it please the Court, Courtney Dixon for the Secretary. As Your Honor's questions have indicated here today, the Department of Labor's approach of using salary level as one component of the criteria for the exemption dates back to— Could you pull that mic a little closer? Is that better, Your Honor? For you. You need to speak up. Certainly. It dates back to 1938. It's been maintained by every administration over the course of the last eight decades. It's been upheld by every court of appeals to have considered the question, including this court in Wirtz. And it's been widely supported by employers and employees alike. Plaintiffs have presented no reason to overturn the nearly 90-year-old approach that's been used by the Department. Well, we do have a new standard, new standard in town. And what if we don't think that a is a strong proxy for duties listed in the exemption and that you don't have the right to just make an exemption on the exemption on the salary when salary is not a strong proxy? What if we thought that? Few responses to that. By Your Honor referring to a new standard, I assume you're referring to Loper-Bright. You know, Loper-Bright overruled Chevron, which, you know, the traditional Chevron that the court—understanding that the court overruled is that ambiguous statutory language is an implicit delegation to the agency. That's not involved in this case. It's never been involved in this case. This is an explicit delegation. And indeed, in Loper-Bright, as an example of an explicit delegation, the Supreme Court cited a parallel FLISA exemption. It was not this that was cited. I mean, that's in your letter, your 28J or whatever we asked you to write. What if we don't think that's true? So that it's the same delegation and so that why—tell us why this would be specifically delegated for you to make an exemption on top of an exemption based solely on—based on salary. Well, the parallel language is define and delimit. That was in the FLISA exemption that the Supreme Court cited in Loper-Bright. That's the same FLISA exemption that was at issue in Koch. And that same define and delimit language is in the exemption at issue here. What does it mean here, though? I mean, assume that the exemption speaks about functions, duties, capacity, and it says capacity. Where do you get to a minimum salary rule from define and or delimit? So, you know, as Your Honor noted to opposing counsel, the statute refers to employees in a bona fide executive capacity, you know, a good faith position. Going back to the inception of the FLISA, the department held extensive hearings on the exemption. It heard testimony from employees and employers. It found wide agreement that salary is a relevant indicator of the capacity in which an employee is employed. It also goes to an employee's good faith in saying that someone is exempt from the FLISA's requirements. You know, this is—this is an exemption from the FLISA. These are workers who, you know, are not entitled to overtime pay. And the premise of this exemption in particular for bona fide executive employees is the understanding that, you know, we're not generally concerned about the hours worked by bona fide executive administrative professional employees keeping track of those hours because they generally have other compensation to—or, you know, other benefits that compensate them for their long hours of work, including higher pay. So this was something that the department, of course, extensively considered going back to the beginning of the FLISA. It found, as I noted, you know, it relied on testimony from employees and employers, and that consensus has endured. Going back to the 2019 rulemaking at issue here, even the department's most recent rulemaking, there was support for the salary level test from employers. That's not only because it's convenient, which employers, of course, have emphasized that it provides a bright line objective metric, which employers like, but also because it goes to— How do you get to have this bright be the substitute in when there's no gap to be filled? So a few things, Your Honor, and I want to be clear also that, you know, the salary level test is calibrated to work together with a duties test, and together, salary level, duties, salary basis, all of these work together to identify these employees, and that is fully consistent with the text of the exemption. So the department— You already have defined duties, and that's how you can answer the question. Why do you get to import something different to help when you already have a perfectly fine thing that's consistent with the statute? So I'll say a few things, Your Honor. One, I mean, of course, the statute doesn't refer explicitly to duties any more than it explicitly refers to salary. It says, you know, that the department is tasked with defining and delimiting these employees employed in this bona fide capacity, and to Your Honor's question, I want to be clear about kind of what the department is figuring out here. You know, take someone who works, you know, an employee who works in a business like Mr. Mayfield. He owns fast food enterprise. You know, a manager, someone who has the label of a manager in a fast food enterprise, you know, maybe, yes, part of their duties include supervising the employees on their shift. Part of their duties might also include stocking shelves, washing dishes, serving customers, and— But that doesn't mean they're not an executive. Right. They might have a mixture of duties. I mean, yeah, but there's a difference, I guess. Again, back to Judge Elrod's question, what does it have to do as far as pay? So this is going to the question the department has to, you know, across the economy, across workplaces, across different occupations, it has to identify this category of workers that are employed as bona fide executive, you know, in a good faith executive capacity. Yes, that involves an employer's work duties, and absolutely, the department looks at duties. But isn't that full stop, period? No, Your Honor. Why do you need to look at salary? I mean, the exemption itself, the text of the statute doesn't allude to or mention salary or pay or compensation. It refers to someone employed in a bona fide capacity as an executive while giving authority to the department to define and delimit those terms. And, you know, I'll refer to the Supreme Court's decision in law— How do you define delimit? So, Your Honor, you had referred earlier, I mean, the Tenth Circuit's decision in Walling v. Yeakley, that's a 1944 decision, it's one of the first decisions kind of upholding the department's salary level test, it looked exactly to these phrases, define and delimit. And it recognized, you know, not only does the secretary have the authority to define these terms, but also delimit, to move from the general to the more specific, to draw lines in this area, and Congress anticipated that. And in Long Island Care v. Koch, again, the Supreme Court there considered the parallel FLISA exemption for workers employed to provide companionship services, and there it recognized that Congress had explicitly left gaps for the agency to fill by using the phrase define and delimit. That included the scope and definition of the general statutory terms. And there, you know, the Supreme—sorry, the Supreme Court didn't say that the department was limited to only considering the duties of someone employed to provide companionship services, but rather there's all sorts of questions that are raised by how the exemption should specifically apply, the scope of the exemption. And there it said that the secretary had the authority to decide whether and how the exemption applied to workers paid by third parties. But in other contexts within the statute, when you have a minimum salary requirement, there's information about how to calculate that, and there's not here. So, you know, you can think of baseball players, for example. And so that's—it seems like that really cuts against you, that when they wanted to do minimum salaries, we could do minimum salaries, but there's here that we already have another—there's nothing indicating that that was going to be tied to this. No, Your Honor. I think the baseball player exemption only supports the department's approach. Well, explain. That was enacted in 2018. And so, you know, Congress has revisited the FLISA many times since it was enacted in 1938. Congress has presumably been well aware of the department's longstanding approach, and indeed it's imported the department's regulations into other statutes relating to government benefits. Congress has never disturbed the department's approach, and the fact that Congress has amended the FLISA against the department's understanding, and has itself found salary to be a relevant criterion that it's put in particular exemptions, again, only supports the department. But Congress wanted to put it in specifically when it meant minimum salary to be included. It put it in. It didn't put it in here. Congress did use the phrase define and delimit, and it referred to employees in a bona fide, you know, good-faith capacity. Also brings up another question, really another argument that the plaintiffs are making. Um, if define and delimit is capacious enough to include this minimum salary rule under this exemption, don't we have a non-delegation problem? Absolutely not, Your Honor. How then, what is the intelligible principle that the department can use to set the minimum salary level? So, first, just to take a step back, and to be very clear, you know, Congress made, you know, the policy decisions itself here. Congress set out the FLISA's policies. Congress established the minimum wage and overtime pay requirements, and Congress put in the statute this exemption for workers employed in a, you know, bona fide executive capacity, while delegating to the department authority to work out the details. And that is exactly the kind of delegation that the Supreme Court identified in Loeb or Bright as, you know, a permissible one of an explicit delegation to the agency. Plaintiffs don't dispute that, you know, presumably as long as the department can consider duties, there's no delegation problem. But they claim that if the department can consider salary level, suddenly the statute is an empty vessel, and there's absolutely nothing going to— Well, it doesn't allude to it. So that's what I'm asking. What is the intelligible principle for setting the minimum salary rule? Is Your Honor asking about setting a particular minimum salary rule? Yes. I mean, basically, I mean, is it defensible that the agency can do whatever it wants to? The agency has never claimed that it can set, you know, whatever salary level— What is the—what are the parameters, then, that Congress gave you to delimit that? Every time—I mean, the text of the statute guides the agency in setting a salary level just as it guides it in setting a duties test. Every time that the agency has set a particular salary level, going back, you know, to 1938 and the, you know, it held extensive hearings, the department has considered comments from employee and employer representatives from, you know, a variety of occupations across the economy. It's considered data, and it's made a decision based on all of those. And, of course, you know, if any— That sounds like the Administrative Procedure Act. I'm talking about the non-delegation issue. In other words, I don't know that it's quite the same to say, well, it's not arbitrary and capricious what the agency did. They solicited, they had comments and notice and all that. But here, I'm just asking, what stops the agency for defining it? I mean, the agency's just issued a rule significantly raising the minimum salary, which is going to throw many more people out from the exemption into the FLSA's general coverage, right? What is the principle that cabins what the agency can and can't do per the statutory text? I mean, you know, the agency's most recent rule isn't before this Court. The agency did in that regard. I know that, but I'm just saying they've done that over time. It's expanded and contracted. What is the principle, the intelligible principle? The agency is in all circumstances acting within the parameters that Congress gave it. And yes, there is a degree of discretion of drawing lines. Well, there are no parameters, though, because Congress didn't talk about the minimum salary rule. It's not true. I mean, the agency has always recognized, for example, that it couldn't say anyone making, you know, above $100,000 a year is included within the scope of the exemption, regardless of the duties that they perform. Why could they not do it? Because if you're a mechanic or a plumber, for example, but you're highly paid, that's not what we think of as a bona fide executive employee. The agency has always looked at the text of the exemption. It's considered input from, you know, stakeholders, and it's set a salary level that's calibrated to work together with the duties test. Well, you're saying that they've done a good job in being narrow. That's not the question. The question is what was delegated to them. And you're engaging at the level of saying, well, the decisions they've made have been good. That's not the same. Can you answer the first question, please? You know, what I'm saying is that Congress set out the statutory exemption in the context of a larger statute. And, yes, Congress told the agency to work out the details of its exemption. That's not remarkable. And in doing so, the Department has done exactly what the Supreme Court, you know, has stated that agencies should do in this circumstance. You know, agencies have expertise. They have the ability to consult with stakeholders to consider data, and the Department has always set a salary level within those confines. And my point also being that the Department, the salary level is, you know, works together with a duties test. So the Department is considering all of these things and setting a salary level. And its goal in all of this is to identify this class of workers that Congress has set out. And the fact that the agency has taken this general approach since the inception of the statute, that it's remained consistent over time, you know, those are exactly the kind of considerations the Supreme Court in Loper-Bright emphasized that, you know, showed that courts should give respect. Let me interrupt you with a couple of questions for what you're addressing. First, are you aware of any other circuit that held that the Secretary exceeded the statutory authority with the salary level test? No, Your Honor. I'm not aware. Okay. And then how much respect or deference should we have for the Department's consistent use of the salary level test since 1938? I think considerable, and that goes exactly to what I was just discussing, Your Honor. The Supreme Court was mentioning those factors also in the context that even when you don't have an express delegation to an agency, the fact that something goes back to its contemporaneous with the enactment of the statute, it's remained consistent over time, you know, that is something that, you know, indicates that courts should give respect to an agency interpretation even in the absence of an express delegation. And here we do have an express delegation. We have, you know, decades of Congress enacting the FLISA against this interpretation. It's never disturbed this approach, and every Court of Appeals to have considered the question has upheld this approach. Well, how do you—is this consistent with our recent decision in the USAC case? I mean, it was the Enbank Court, right? Is that the—I'm not familiar with that case, Your Honor. I don't remember the style of it. It was the FCC case. The Universal Service Fund, where we found that there was no real intelligible principle. Right. You're not familiar with that? It's new. That's okay. If you want to submit a 28-J each side can do that within three days. Certainly, Your Honor. Okay. I'm sorry. Do you have another question? Okay. If we needed to get into the major questions doctrine, do you have a position on whether the doctrine functions as one interpretive tool among many or as a clear statement rule? I mean, I certainly don't think the Court needs to address the major questions doctrine. I mean, I think this Court has used it as an interpretive tool in addition to other statutory tools. But here, I mean, the fact that, as I just noted, I mean, this Court in 1966 upheld the department salary level test. It's remained consistent across presidential administrations over the course of eight decades. All of that belies plaintiff's assertion that this is some hotly contested political issue to which the major questions doctrine would apply. This is not an unprecedented interpretation by the agency, and this is something that the agency has maintained for the better part of a century now. The fact that something's been done a long time, I know you think it is relevant under Loper, but it's not dispositive. Well, Your Honor, I think that the fact that this has been done a long time, you know, I'm not just saying that this is old, so it's okay. I think it goes to several substantive points here. I mean, first, it's certainly, as I noted, belies plaintiff's reliance on the major questions doctrine. It also belies plaintiff's assertion that they say salary level has no connection to how much an employee is paid. Well, the department has disagreed for, you know, 80 years now, and that has been based on employer and employee representative input. Again, as I had noted earlier, there were hearings on the exemption in which there was widespread agreement by employers that salary level is a relevant criterion in determining the capacity in which an employee is employed. It's a marker of an employee's status, of their good faith. Yeah, you're again telling us why it's good that the agency has done this, not whether or not the agency was authorized to do this or could do this. I'm trying to— I'm speaking exactly to the statutory text here, Your Honor. The statutory text refers to bona fide, as in good faith and capacity, an employee's position in the workplace. Well, there's been wide agreement that this salary level is relevant to an employee's position in the workplace and an employer's good faith in saying that they are exempt from the act, and it's not just the department that's held that view. As I noted, it's employees and employers over the course of decades, and there's been agreement by the courts. You're basically saying that the define and delimit delegation to the agency leaves this exemption to be pliable and to use proxies and et cetera and so forth, and that's okay? The define and delimit text is certainly relevant. This is an explicit delegation. Again, I would go back to the Supreme Court's decision in Koch where they said that Congress had delegated to the agency authority to work out the scope and definition of the terms, and there were all sorts of questions raised in that case, and Congress had entrusted the agency to work it out. Congress used a general exemption. It did not itself define these terms. It did not itself work out the details. It entrusted that to the agency, and the agency has exercised that authority over the last years, as I've been mentioning. Should we remand it, as Judge Elrod asked counsel opposite? I don't think that that's necessary. As I noted, this is an explicit delegation of authority. The court asked for supplemental briefing on Loeb or Bright. We think that Loeb or Bright confirms the department's regulation in this case, but this isn't a traditional Chevron case in terms of there being ambiguous statutory language we're trying to understand if there's an implicit delegation of authority to the agency. I see that I'm almost out of time. I'm happy to answer any other questions or else we ask that the court affirm. Do you have anything? No. I think we have your argument. Thank you very much. Thank you. Yes, Your Honor. Earlier, I brought up the consumer's research versus FCC case that you were referring to. And the point of that, pertaining to this whole line of questioning here, was that this court recognizes that the intelligible principle test has teeth, even today. And again, as we've argued all along, if you accept the department's blank check interpretation of the defined delimit, then you run square into the non-delegation problem. It's on all fours at that point with Panama refining. Our friend on the other side said repeatedly that Congress has left it, has delegated authority for the agency to work out the details how. They have not been able to point to anything. I will say, in the original enactment of the FLSA, Congress authorized the department to make minimum wage orders. And in that case, it set a floor and a ceiling and had very specific criteria of things that the agency was required. You have none of that here. And so the agency is free to raise the minimum salaries as high as it wants or to withdraw them entirely. I mean, there's no direction even to have a minimum salary. And they could raise it to $150,000. Well, that was the problem in the FCC case, right? It was full in whatever the broadband coverage was and what have you. And basically, there was no way to define what that meant. And they could just continue justifying it and setting this fee based on basically a very amorphous principle. I mean, but here we do have intelligible principles throughout the FLSA. And this is an exemption, a small subset of the FLSA. So doesn't that get us there for non-delegation? Oh, Your Honor, the only thing that our friends on the other side have been able to point to in the text of the FLSA is just the sort of general statements of policy at the very outset of the FLSA. And for one, I mentioned the Encino Motorcars case earlier. That repudiates the notion that you can just rely on the sort of general remedial goals of the FLSA in construing the scope of the FLSA exemptions. But that's a statutory— How is this different than COKE? What's that? How is this different than COKE? In COKE, the agency truly was operating within the limits of its—within the boundaries of its delegated authority. Who had to be—what it meant to be employed as a home care worker had to be construed one way or the next, either to include or not to include third parties. The distinction here is that the Department is inviting, is interpreting the text in a operative text, any objective meaning. It would be as if Congress passed a statute saying, well, you can define and delimit height restrictions for amusement park rides. And the agency said, OK, well, that means that we can impose weight restrictions. But again, I do want to— If we were to agree with you, would we be creating a circuit split with many other circuits? You'd put us in a precarious position, wouldn't you? Your Honor, under Loper-Bright, we have to address this under the current standard of  And yes, that would create a circuit split, undoubtedly. But it's an important issue and one certainly that matters to Mr. Mayfield and his company and a lot of employers now as soon as the salary level is rising. So—and it begs the question, because the Department has continued to raise the salary levels—rules, you saw radical oscillation from one administration to the next. Now they've tied the minimum salary rules, so it's going to continue to rise on a periodic basis. The question— Have you all challenged the promulgation of that rule? I mean, is this dispute really an APA dispute about the promulgation of the new rule at the new salary level? It's a dispute about a continuing—our client is suffering a continuing injury. It's only going to be exacerbated with this new rule. And the fact that they have radically raised the salary requirements exacerbates the injury, but it points to the fact, more importantly, that there are no limits on the agency. This is the non-delegation problem. They could raise the rule to—they could raise it to $150,000 a year, as in, for example, the Hewitt case. You had someone who's very highly compensated, but they still had to pass all the tests. You still have to pass the duties test, even if they require high salaries. And again, there's no direction here in the text, and the agency certainly cannot invent its own direction. And one more point I'd like to make, because this has been said a number of times on the other side, that the views of employers and employees somehow matters. That's not how we do statutory interpretation. But if we're really accepting that, that's just doubling down on the non-delegation problem, because at that point, you're exactly where you were with the National Industrial Recovery Act. And of course, the employers supported those national—those industry codes, which the Secretary of Labor simply carried on the policy from the National Industrial Recovery Act when setting minimum salary requirements in 1930. Thank you. Thank you. We have your argument. We appreciate the argument.